UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| ANDREW CONLEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:23-cv-00074-TWP-KMB |
| | ) | |
| WARDEN DENNIS REAGLE, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER DENYING PETITION FOR A WRIT OF HABEAS CORUPUS

This matter is before the Court on a Petitioner for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, filed by Petitioner Andrew Conley. (Dkt. 1). Conley pled guilty in Indiana state court to one count of murder and was sentenced to life imprisonment without the possibility of parole ("LWOP"), for a murder Conley committed when he was 17 years old. He contends that his guilty plea was not knowing, intelligent, and voluntary, and that he received ineffective assistance of trial counsel. Because the Court concludes that Indiana state courts reasonably applied federal law in rejecting these claims, Conley's Petition for Writ of Habeas Corpus is **denied** and a certificate of appealability will not issue.

## I.    BACKGROUND

Federal habeas review requires the Court to "presume that the state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence." *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018); *see* 28 U.S.C. § 2254(e)(1). On direct appeal, the Indiana Supreme Court summarized the relevant underlying facts as follows:

On Saturday, November 28, 2009, Conley was seventeen-and-a-half-year-old when he murdered his ten-year-old brother,

1

Conner. The murder took place between 8:30 p.m. and 10:00 p.m. His mother and adoptive father were at work that evening until the early morning hours. As was not uncommon, Conley was responsible for watching Conner that evening. Conley's mother told him he would have to find a babysitter for Conner if he wished to go out with his friends.

Conley wanted to go out that evening, so Conley drove Conner to their grandmother's house in Rising Sun, Indiana, but she was not home. He next asked his uncle to watch Conner but was told no. After they returned home, Conley and Conner began wrestling.

At some point, Conley got behind his brother and choked him in a headlock with his arm until Conner passed out. Conner was bleeding from the nose and mouth. Conner was still breathing. Conley drug Conner into the kitchen, retrieved a pair of gloves, and continued to choke Conner from the front, around his throat. Conley choked Conner for approximately twenty minutes total.

Conley next got a plastic bag from a drawer in the kitchen and placed it over Conner's head. Conley used black electrical tape to secure the bag by wrapping the tape around Conner's head. Conner was still alive. In fact, Conner's last words were "Andrew stop."

Conley then drug Conner's body to the steps that lead to the basement, drug him down the steps by his feet, across the floor, and outside the home. Conley slammed Conner's head on the concrete multiple times to ensure Conner was dead and then placed his body in the trunk of his car. Conley cleaned himself up and put on new clothes. He put the bloody clothes in his closet and hid the bloody gloves in a chair.

Conley next drove to his girlfriend's house. While there they watched a movie, and he gave her a "promise ring." Conley's girlfriend testified at the sentencing hearing that Conley was "[h]appier than I'd seen him in a long time." Conley spent two hours at his girlfriend's house, while Conner's body remained in the trunk of the car. After leaving his girlfriend's house, Conley drove to an area behind the Rising Sun Middle School. Conley decided to drag Conner's body into the woods and covered the body with sticks and vegetation.

Conley returned home during the early morning hours on Sunday the 29th when no one was home. He cleaned up the blood in the house. When his father returned home around 2:30 a.m., Conley was acting normal. Conley said that Conner was at his grandmother's house and Conley also asked his father for some condoms.

Conley's mother arrived home around 5:45 a.m., and Conley and his mother had popcorn, watched a movie together, and cracked jokes back and forth. His mother fell asleep. On two occasions that early morning, Conley went into his father's bedroom and stood over him with a knife. Conley said he had the intent to kill his father, but he decided not to.

Later that same Sunday, Conley watched football with his father. Following football, Conley left home and drove to the park in Rising Sun where Conner's body had been discarded, but he never went to the actual location. Instead, Conley spoke to two friends and told him that he had killed Conner. Thereafter, around 8:00 p.m., Conley drove his car to the Rising Sun Police Department and voluntarily reported he "accidentally killed his brother" or that he "believed" he had killed his brother.

The police contacted Conley's parents, and after consulting with his parents and waiving his right to counsel, Conley confessed to intentionally killing his ten-year-old brother. Conley was charged with murder and ultimately pleaded guilty, without a plea agreement. The penalty phase of the trial was conducted from September 15 to 21. Following the sentencing hearing, the trial court sentenced Conley to life imprisonment without the possibility of parole.

*Conley v. State*, 972 N.E.2d 864, 869–70 (Ind. 2012) (*Conley I*). Conley was represented during these proceedings by attorneys John Watson and Gary Sorge. Dkt. 8-2 at 7, 50 (Post-Conviction Relief Proceedings ("PCR") Transcript, Vol. I).

On direct appeal, the Indiana Supreme Court affirmed Conley's sentence.[1] Conley raised four issues, all of which the Indiana Supreme Court rejected. It held: (1) the trial court properly admitted the expert testimony of Dr. James Daum during the state's rebuttal portion of the sentencing hearing; (2) the trial court properly weighed aggravating and mitigating circumstances in determining Conley's sentence; (3) Conley's sentence was not inappropriate under Indiana Appellate Rule 7(B); and (4) the discretionary imposition of LWOP against Conley for a murder committed when he was 17 years old violated neither the Eighth Amendment of the United States

---

[1] The validity of the conviction itself was not challenged on direct appeal.

Constitution nor the Indiana Constitution. *Id.* at 880. Conley unsuccessfully sought rehearing of this decision and did not file a petition for a writ of certiorari with the United States Supreme Court.

In 2013, Conley filed a state post-conviction relief petition ("PCR petition"), which was denied in 2019. Conley appealed this denial to the Indiana Court of Appeals and, along with amicus curiae from the Indiana Public Defender Council, raised six issues: (1) whether the Indiana Constitution categorically bars LWOP sentences for offenses committed by juveniles; (2) whether Conley's trial counsel rendered ineffective assistance; (3) whether Conley's guilty plea was knowing, voluntary, and intelligent; (4) whether Conley's direct appeal counsel rendered ineffective assistance; (5) whether newly-discovered evidence made Conley's sentence unfair; and (6) whether the Indiana Court of Appeals could review Conley's sentence for appropriateness despite the Indiana Supreme Court's previous rejection of that argument. *Conley v. State*, 164 N.E.3d 787, 792 (Ind. Ct. App. 2021) (*Conley II*). The *Conley II* court held that it would not address the argument that LWOP for juveniles violated the Indiana Constitution because Conley had not raised that issue in his PCR petition. *Id.* at 805. It also held that the PCR court properly rejected Conley's claim that his guilty plea was not knowing, intelligent, and voluntary. *Id.* at 812. Furthermore, it held that the PCR court properly rejected the ineffective assistance of appellate counsel and newly discovered evidence claims. *Id.* at 813-14. And it held that it was barred by res judicata from reconsidering whether Conley's sentence was inappropriate under Indiana Appellate Rule 7(B). *Id.* at 814-15.

However, the Appellate court concluded that Conley received ineffective assistance from trial counsel with respect to his sentencing. It stated:

> Conley's trial counsel failed to adequately present mitigating evidence, especially with regard to Conley's age; the application of

4

> *Roper* [*v. Simmons*, 543 U.S. 551 (2005)] and *Graham* [*v. Florida*, 560 U.S. 48 (2010)]; and Indiana's historical treatment of juveniles. Trial counsel also missed opportunities to present expert testimony on scientific evidence regarding the juvenile brain and diminished culpability of juveniles; and missed opportunities to zealously present evidence and challenge the State's evidence regarding Conley's mental health.

*Id.* at 817. The Indiana Appellate court remanded so that Conley could receive a new sentencing hearing. *Id.*

The Indiana Supreme Court granted the State of Indiana's petition to transfer, thus vacating the *Conley II* decision. *Conley v. State*, 169 N.E.3d 854 (Ind. 2021); Ind. App. R. 58(A). On March 23, 2022, the Indiana Supreme Court affirmed the denial of post-conviction relief in its entirety. *Conley v. State*, 183 N.E.3d 276 (Ind. 2022) (*Conley III*). The Indiana Supreme Court summarily affirmed *Conley II* with respect to whether Conley's guilty plea was knowing, intelligent, and voluntary, whether he received ineffective assistance of counsel with respect to being advised to plead guilty, whether he received ineffective assistance of appellate counsel, and whether newly discovered evidence warranted reconsideration of his sentence. *Id.* at 282 n.1. *Conley III* also expressly held that reconsideration of the appropriateness of Conley's sentence under Indiana Appellate Rule 7(B) was barred by res judicata. *Id.* at 288-89.

*Conley III* also addressed whether trial counsel was ineffective with respect to sentencing, and after thorough discussion of the issue it concluded counsel were not ineffective. Specifically, (1) counsel were not ineffective for not presenting evidence and specific argument about Conley's age and brain development; (2) counsel were not ineffective for not calling certain witnesses on Conley's behalf; (3) counsel were not ineffective for not refuting the State's expert pathologist testimony regarding the nature of the crime; (4) counsel were not ineffective regarding how the State's mental health expert Dr. Daum was challenged; (5) counsel were not ineffective for failure

to investigate. *Id.* at 283-288. The Indiana Supreme Court denied rehearing, and Conley did not file a petition for a writ of certiorari.

Conley, by counsel, filed the present habeas corpus action on May 8, 2023. (Dkt. 1). Conley argues that trial counsel were ineffective by (1) providing faulty advice with respect to pleading guilty; (2) failing to present evidence and legal argument regarding Conley's age and brain development; (3) failing to present evidence rebutting the State's expert pathologist testimony regarding the nature of the crime; (4) failing to adequately challenge Dr. Daum's testimony; (5) failing to obtain jail records that would have been relevant to Conley's mental health; and (6) failing to call any of the 14 character witnesses Conley asserts should have been called to testify at the sentencing hearing. *Id.* at 21-22. Conley also asserts that his guilty plea was not knowing, intelligent, and voluntary. *Id.* at 22.

After the Respondent filed a response, Conley was given six extensions of time to file a reply. (Dkts. 14, 19). The Court denied Conley's seventh motion for an extension of time, noting in part not only the numerous extensions already granted, but that over three months had passed since the filing of the seventh motion (which had sought only a three-day extension of time) and still no reply had been filed. (Dkt. 21). This action is ripe for resolution.

## II. <u>APPLICABLE LAW</u>

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the Court must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (cleaned up). "The

standards in 28 U.S.C. § 2254(d) were designed to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." *Id.* (citation and quotation marks omitted).

A federal habeas court cannot grant relief unless the state court's adjudication of a federal claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"AEDPA review provides an important but limited safeguard: It protects against extreme malfunctions in the state courts' adjudication of constitutional claims." *Klein v. Martin*, 607 U.S. 213, 220 (2026) (cleaned up). To obtain federal habeas relief, a petitioner must "show far more than clear error." *Id.* (cleaned up). Rather, a petitioner must show "that the state court blundered so badly that every fairminded jurist would disagree with the decision." *Id.* "For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "What matters under § 2254(d)(1) . . . is whether a decision is contrary to, or involves an unreasonable application of, [the Supreme Court's] holdings, not whether the state court's opinion satisfies the federal court's opinion-writing standards." *Klein*, 607 U.S. at 221. "The bounds of a reasonable application depend on the nature of the relevant rule. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Schmidt v. Foster*, 911 F.3d 469, 477 (7th Cir. 2018) (en banc) (cleaned up). A

federal court should not readily grant habeas relief if a state court has correctly cited and synthesized applicable precedent. *Klein*, 607 U.S. at 223.

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey*, 877 F.3d at 302. "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision[.]" *Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (cleaned up). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Id.* "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

In this case, the Indiana Court of Appeals' decision in *Conley II* is the last reasoned state-court decision with respect to whether Conley received ineffective assistance of counsel in providing advice to plead guilty, and whether his guilty plea was knowing, intelligent and voluntary. Although the Indiana Supreme Court originally granted transfer as to the entirety of the *Conley II* opinion, in its *Conley III* opinion it summarily affirmed *Conley II* on this issue, which amounted to a denial of transfer and reinstatement of *Conley II*'s analysis as Court of Appeals precedent on these issues. *See Korakis v. Mem'l Hosp. of S. Bend*, 225 N.E.3d 760, 761 (Ind. 2024). The Indiana Supreme Court's decision in *Conley III* is the last reasoned state-court decision with respect to the remaining issues.

### III.    DISCUSSION

**A. Ineffective Assistance of Counsel**

A criminal defendant claiming ineffective assistance of counsel bears the burden of showing (1) that counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *Resnick v. United States*, 7 F.4th 611, 619 (7th Cir. 2021). If a petitioner cannot establish one of the *Strickland* prongs, the Court need not consider the other. *Groves v. United States,* 755 F.3d 588, 591 (7th Cir. 2014). To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt v. United States,* 574 F.3d 455, 458 (7th Cir. 2009). The Court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id.* On the prejudice prong, a petitioner "must show that but for counsel's errors, there is a reasonable probability that the result would have been different." *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (citation modified).

**1. Advice Regarding Guilty Plea**

Conley argues trial counsel provided faulty advice with respect to his guilty plea. A guilty plea "cannot be 'knowing and voluntary' if it resulted from ineffective assistance of counsel." *Hurlow v. United States*, 726 F.3d 958, 967 (7th Cir. 2013). A petitioner who has pled guilty can establish prejudice only by demonstrating "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Perron v. United States*, 889 F.3d 898, 908) (7th Cir. 2018). The Seventh Circuit has specifically held that "[a]n attorney's inaccurate

9

prediction of his client's sentence" does not by itself constitute ineffective assistance of counsel. *United States v. Fuller*, 312 F.3d 287, 293 (7th Cir. 2002).

The *Conley II* opinion begins by correctly reciting the two-part standard for a finding of ineffective assistance under *Strickland*, and that an ineffective assistance claim will fail if a defendant cannot show both deficient performance by counsel and prejudice to the defendant. *Conley II*, 164 N.E.3d at 806. The opinion then briefly addresses the issue as follows:

> First, Conley argues that defense counsel misadvised Conley by advising him to plead guilty rather than proceed to trial on a defense of guilty but mentally ill. The PC Court rejected this argument, and we find no support for this argument in the record. Rather, the record is clear that Conley insisted on pleading guilty and the State would not agree to a plea of guilty but mentally ill.

*Id.*

Although this discussion does not clearly indicate whether the Court of Appeals resolved the issue based on reasonable performance by counsel or lack of prejudice against Conley, that does not mean that the Court unreasonably applied *Strickland* to this claim. As discussed above, the purpose of a federal habeas corpus action is not to critique a state court's opinion writing, but to gauge the reasonableness of its application of federal law to a petitioner's claims. *See also Stanley v. Bartley*, 465 F.3d 810, 813 (7th Cir. 2006) (where state court correctly states *Strickland* standard, imprecise language in opinion does not necessarily mean it applied an incorrect standard).

Turning to the record before the Indiana Court of Appeals, counsel Watson testified at the PCR hearing that "the circumstances of that death were not good, in terms of how we thought a jury would perceive them." Dkt. 8-2 at 38. He believed that "his only chance of, perhaps, avoiding the life without parole was a plea." *Id.* Mr. Watson's recollection also was "that Andrew wanted to

plead guilty from start to finish . . . ." *Id.* at 39. Mr. Watson denied promising Conley that he would not be sentenced to LWOP if he pled guilty. *Id.* at 45.

Counsel Sorge testified at the PCR hearing, "I remember distinctly that very early on, when I met with Andrew, he wanted to plead guilty. He was remorseful, he wanted to plead guilty." *Id.* at 52. Mr. Sorge advised Conley against pleading without a plea deal, at least before counsel was able to explore the possibility of an agreement with the prosecution. *Id.* Mr. Sorge did try to negotiate a plea agreement for Conley to plead guilty but mentally ill, but counsel did not "think the State would have gone along with it." *Id.* at 61. Ultimately, Conley was "adamant" that he wanted to plead guilty. *Id.* Furthermore, Mr. Sorge believed the prosecution's case was "overwhelming" and that it would do more harm than good to Conley to go through a guilt phase of trial "where the outcome was inevitable" and that it would expose the trial judge to more negative information than if Conley pled guilty. *Id.* Mr. Sorge also denied that Conley was promised that he would not be sentenced to LWOP if he pled guilty. *Id.* at 69.

During his deposition taken before the PCR hearing, Conley expressed unhappiness that counsel did not "allow" him to plead guilty sooner. PCR Ex. A, Vol. 2 at 239. He also testified, "I honestly never thought I should go to a jury trial," at least as to his guilt or innocence, though he did express that he would have liked to have had a jury for his sentencing. *Id.* at 248-50. But a jury trial for sentencing was not an option for Conley after he elected to plead guilty. *See* Ind. Code § 35-50-2-9(d) (providing that sentencing in an LWOP proceeding is to be conducted by the judge if a defendant pleads guilty). During the change of plea hearing, Mr. Watson directly asked Conley whether he understood that he had a right to a jury trial on the question of whether he should be sentenced to LWOP, and that he would waive that right and be sentenced by the judge instead if he pled guilty; Conley said he understood and was "comfortable" with that. Trial Tr. pp. 246-47.

11

"[A] defendant is normally bound by the representations he makes to a court during" his plea colloquy. *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010).

In light of the above evidence, a "fairminded jurist" could readily agree with *Conley II*'s holding that Conley did not receive ineffective assistance of counsel under *Strickland* with respect to any advice given about pleading guilty. Although not expressly stated in *Conley II*, the record reasonably supports the conclusion that trial counsel did not perform deficiently on this point. The record indicates counsel were faced with a client who was "adamant" about wanting to plead guilty, and the prosecution was unwilling to consider the possibility of agreeing to a plea of guilty but mentally ill. Conley suggests it would have preferable for a guilt-phase trial to be held, at which mitigating evidence could have been "frontloaded" in anticipation of sentencing, even if a guilty finding was almost certain. But, that would be a matter of tactics and strategy, to which courts ordinarily must defer. *See Powell v. Fuchs*, 4 F.4th 541, 550 (7th Cir. 2021). Also, Conley has cited no authority suggesting that "frontloading" is a constitutionally-mandated tactic. Counsel reasonably believed instead that there was a high risk of disclosing more negative information during the guilt phase of a trial than if they proceeded directly to sentencing. They also reasonably believed that the best chance for Conley to avoid an LWOP sentence was to plead guilty, but they never promised him that he would avoid such a sentence. That Conley ultimately was sentenced to LWOP does not mean they provided faulty advice. The Indiana Court of Appeals did not unreasonably conclude that counsel were not ineffective on this claim.

### 2. Evidence and Legal Argument Related to Juvenile Brain Development

Next, Conley contends his attorneys were ineffective by presenting "no evidence about brain development in children as it relates to their immaturity and culpability" and failed to make arguments to the trial judge based on the Supreme Court decisions in *Roper v. Simmons*, 543 U.S.

12

551 (2005), and *Graham v. Florida*, 560 U.S. 48 (2010). *Roper* barred use of the death penalty against persons who committed a capital offense before turning 18; *Graham* barred imposition of an LWOP sentence against a juvenile who committed a crime other than homicide. As the Indiana Supreme Court noted in *Conley III*, neither *Roper* nor *Graham* directly applied to Conley, who committed homicide and was sentenced to LWOP, not death. *Conley III*, 183 N.E.3d at 283-84. Thus, it would be difficult to fault counsel for not making an argument to the trial judge based on these cases.

Moreover, in *Conley III* the Indiana Supreme Court held that Conley was not prejudiced by any failure by counsel to discuss those cases, or present evidence or argument directly related to juvenile brain development. *Id.* at 284. It recognized that "'youth matters in determining the appropriateness of a lifetime of incarceration without the possibility of parole.'" *Id.* (quoting *Miller v. Alabama*, 567 U.S. 460, 473 (2012)). And, in fact, the trial judge acknowledged and discussed Conley's age when sentencing him. Appellate Appendix p. 161-62. However, the judge gave that factor only "some" mitigating weight, in light of Conley nearly being 18 when he murdered his brother, his normal cognitive functioning, and that he could make rational decisions. *Id.* The *Conley III* opinion also noted that in *Conley I*, Conley's argument that his sentence was inappropriate under Indiana Appellate Rule 7(B) was rejected, after that opinion considered and discussed *Miller* at length as applied to Conley's case. *Id.* at 284 (citing *Conley I*, 972 N.E.2d at 875-76). *Miller*, in turn, had held that mandatory imposition of LWOP against a juvenile offender was unconstitutional (Conley's LWOP sentence was discretionary, not mandatory), after thorough discussion of *Roper* and *Graham*. The *Conley III* opinion thus held that "we do not find a reasonable probability that the outcome would have been different had counsel presented additional evidence about juvenile brain development." *Conley III*, 183 N.E.3d at 284. *Conley III*

further observed that *Conley I* is "an important guidepost for juvenile LWOP cases where, even considering the notable differences between juveniles and adults, the juvenile's crimes are so reprehensible and heinous that an LWOP sentence would be appropriate." *Id.* at 284.

In *Conley III*, the Indiana Supreme Court fully considered the implications of trial counsel's failure to directly present evidence or argument related to juvenile brain development during Conley's sentencing. It reasonably applied *Strickland*, *Graham*, *Roper*, and *Miller* in finding no ineffective assistance of counsel on this issue. There is no basis for this Court to second-guess that determination on habeas review. *See also Walker v. Cromwell*, 140 F.4th 878, 882 (7th Cir. 2025) (noting that Supreme Court case law "offers mixed signals on cases . . . where a juvenile homicide offender is sentenced to life without parole as a matter of judicial judgment and discretion.").

### 3. Failure to Directly Rebut Pathologist's Testimony

During Conley's sentencing hearing, the prosecution presented testimony by pathologist Dr. Dean Hawley regarding Conner's cause of death. Dr. Hawley testified that Conner could still have been alive when Conley put a plastic bag over his head. Trial Tr. at 439. At his PCR hearing, Conley presented testimony of an expert – Dr. George Nichols – who questioned some of Dr. Hawley's findings, specifically as to whether Conner might have been alive when Conley put the plastic bag over his head. See Dkt. 82-2 at 98. Conley asserts trial counsel were ineffective for not retaining at the time of sentencing an expert who could have refuted Dr. Hawley's testimony.

The Indiana Supreme Court in *Conley III* held both that counsel performed reasonably on this point, and that even if Mr. Nichols or someone else had testified similarly at the sentencing hearing, there was no prejudice to Conley. *Conley III*, 183 N.E.3d at 285-86. At a bare minimum, *Conley III*'s finding of a lack of prejudice under *Strickland* was a reasonable conclusion. Dr. Nichols's testimony, or testimony like his, could only at most have cast doubt on whether Conley

14

managed to kill Conner before or after he put the plastic bag over his head. But, whether or not Conner actually was dead when Conley put the plastic bag over his head, it surely indicates that Conley thought he was not yet dead at that time. Even if Conner was dead, it was indeed one of four violent acts that Conley committed during the course of the evening, as correctly noted by the trial judge at sentencing: two strangulations/chokings, the plastic bag, and bashing Conner's head on concrete. It is reasonable to think that if testimony like Dr. Nichols's had been presented at the sentencing, it would have made little to no difference in the trial judge's sentencing decision. The Court cannot disagree with *Conley III*'s observation "about the horrific nature of the crime regardless of whether Connor was alive when the bag was placed over his head." *Conley III*, 183 N.E.3d at 286.

### 4. Alleged Failure to Adequately Challenge Dr. Daum's Testimony

At sentencing, the prosecution presented the testimony of Dr. Daum to rebut that of Conley's expert, Dr. Edward Connor, regarding Conley's mental health. Dr. Connor testified that he believed Conley suffered from schizoaffective disorder (bipolar type), and that he did not have any personality disorders. Trial Tr. pp. 604-05. Dr. Daum disagreed with Dr. Connor's diagnosis and further agreed with the prosecutor that "a more plausible explanation . . . is that there's evidence of psychopathic personality [which] would not be a mental illness[.]" *Id.* at 980-81. There was no direct objection to this questioning, and Conley asserts trial counsel were ineffective with respect to not challenging this testimony or obtaining a different expert to rebut Dr. Daum.

In *Conley III*, the Indiana Supreme Court found that counsel did not perform deficiently, because they moved "to strike Dr. Daum, made appropriate objections, and effectively cross-examined Dr. Daum. Accordingly, we do not find that counsel's performance was deficient." *Conley III*, 183 N.E.3d at 286. The record supports this determination as reasonable fact finding

and a reasonable application of federal law. *See* Trial Tr. pp. 930-38 (motion to strike discussion and ruling); 938, 944, 948, 950, 953-54, 956, 957 (objections to direct testimony); 960-72 (cross-examination); 974, 977, 978, 982 (objections to re-direct testimony). And Dr. Connor already presented testimony favorable to Conley regarding his mental health; Conley does not identify what additional expert testimony could have been adduced at his sentencing hearing that could have made a difference in his sentencing.

Moreover, as *Conley III* suggested, counsel's tactics seemed to be effective. The trial court's sentencing statement acknowledged that Dr. Daum "indicated that Defendant exhibited some characteristics of a psychopath" but that he "was not able to render a specific diagnosis because he did not personally examine the Defendant." Appellate Appendix p. 153. Furthermore, when discussing Conley's mental health as a mitigating circumstance and deciding to give it "some" weight, the trial court did not mention Dr. Daum's testimony. *Id.* at 156-60. Thus, not only is it unclear what more trial counsel should have done to challenge Dr. Daum's testimony, there does not appear to have been any prejudice to Conley in that regard. *Conley III* did not unreasonably apply federal law in resolving this issue.

### 5. Jail Records and Personnel Testimony

During his PCR proceedings, Conley presented evidence that there were certain records from the Dearborn County Juvenile Center and the Switzerland County Jail, where Conley was detained before trial, that were not obtained by trial counsel. PCR Ex. 6 & 7. These records contain documentation of Conley's mental health problems, including suicidal ideations, while in those facilities. He also claims personnel at these facilities could have provided corroborating testimony regarding Conley's mental health. Conley asserts trial counsel were ineffective for not obtaining these records and testimony and using them to help expert witnesses evaluate his mental health.

16

The *Conley III* opinion found that these records, at most, were merely cumulative of other evidence that was presented during sentencing. *Conley III*, 183 N.E.3d at 287-88. It noted that Conley did present evidence "that he suffered from schizoaffective disorder and depression; that he suffered from a mental disease or defect that affected his ability to control himself; that he felt remorse for the crime; and that he did not have a psychopathic personality." *Id.* at 287. Additionally, the Court observed that Conley's own expert, Dr. Connor, testified at the PCR hearing that these records "simply corroborated what he had already known and considered. Therefore, given the cumulative effect of these jail records, counsel's decision not to request them was objective reasonable." *Id.* at 287-88.

The Court notes that it might be more important to know whether the jail records could have changed the mind of someone who testified at sentencing in a negative way about Conley's mental health, as opposed to whether it confirmed a diagnosis, such as Dr. Connor's, that was favorable to the finding of a mitigator. But Conley does not direct the Court to any such testimony in the PCR record. The Court cannot search for such evidence for him. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (holding appellate court violated party-presentation principle by granting habeas corpus relief on a basis not argued by petitioner). Conley's perfunctory one-paragraph argument regarding the jail records falls significantly short of showing a reasonable probability of a different result at sentencing if the records had been obtained before sentencing. That is, he does not explain why or how this evidence would have changed the trial judge's sentencing decision to acknowledge and give Conley's mental health problems "some" mitigating weight, but no more than that. This is inadequate for purposes of granting federal habeas corpus relief from a state-court decision. *See Thornell v. Jones*, 602 U.S. 154, 166-68 (2024) (holding state habeas petitioner who presented additional evidence of mental health problems during post-conviction proceedings was not entitled

17

to relief, where petitioner did not show how the new evidence would have "fixed" the state sentencing court's consideration of but giving little mitigating weight to petitioner's mental health).

### 6. Failure to Present Additional Character Witnesses

At Conley's PCR hearing, he presented testimony from over a dozen witnesses who could have testified at his sentencing hearing as to his good character or could have testified as to concern over his mental health shortly before the murder. He contends that trial counsel were ineffective for not calling these persons to testify in support of him at the sentencing hearing.

On this issue, the Indiana Supreme Court stated, "it is not clear if or how such evidence would have helped Conley. . . . [M]any of the witnesses called to testify at the post-conviction hearing had also been called at the sentencing hearing; the bulk of the testimony from the witnesses on post-conviction was about how shocked they were that Conley killed his brother." *Conley III*, 183 N.E.3d at 284-85. The Court also noted that trial counsel had called several character witnesses during sentencing, and "[t]he fact that counsel did not call every person Conley knew or present cumulative evidence regarding how his crime was out of character does not constitute deficient performance." *Id.* at 285. Also, as to prejudice, "Conley has failed to meet his burden to show that the result of the proceeding would have been different if counsel had called additional witnesses." Id.

This Court cannot say these conclusions were an unreasonable application of *Strickland*. At sentencing, trial counsel called two teachers, a principal, Conley's childhood Cub Scout leader, the owner of a restaurant where Conley worked for three years, and Conley's grandmother to testify in support of Conley's character. Trial Tr. pp. 820-67. Having reviewed the testimony of Conley's proffered witnesses at the PCR hearing, this Court also can confirm that the vast majority of their testimony would have been entirely cumulative of the witnesses that trial counsel did call – stating

18

some variation of shock and surprise at the murder and remembering Conley as a good student or person.

It is true that "testimony of additional witnesses cannot automatically be categorized as cumulative and unnecessary" when considering a claim of ineffective assistance for failing to call such witnesses. *Crisp v. Duckworth*, 743 F.2d 580, 585 (7th Cir.1984). On the other hand, it is not ineffective assistance for trial counsel at sentencing to not present "mitigation evidence [that] 'would barely have altered the sentencing profile presented.'" *Laux v. Zatecky*, 890 F.3d 666, 676 (7th Cir. 2018) (quoting *Porter v. McCollum*, 558 U.S. 30, 41 (2009)). At a minimum, Conley has failed to demonstrate how *Conley III* unreasonably concluded that he was not prejudiced by trial counsel's failure to call these additional witnesses. Conley's "sentencing profile" would barely have been altered by the presentation of these witnesses. *See Laux*, 890 F.3d at 675 (noting that "*Strickland* cases, especially in the mitigation evidence context, are not easy for [habeas] petitioners to win.").

### B. Knowing, Intelligent, and Voluntary Plea

Finally, Conley alleges that his guilty plea was not knowing, intelligent, and voluntary because he was misadvised about the consequences of his plea "and for which he got nothing while surrendering a lot . . . ." Dkt. 1 at 22. This, and a citation to *Johnson v. Zerbst*, 304 U.S. 458 (1938), is the full extent of Conley's argument on this point.

In *Conley II*, the Indiana Court of Appeals first stated the proper standard for assessing the validity of a guilty plea as outlined by *Hill v. Lockhart*, 474 U.S. 52 (1985), and as applied by various Indiana state cases and Ind. Code § 35-35-1-2. *Conley II*, 164 N.E.3d at 812. It then found:

> The record of the guilty plea hearing and the sentencing hearing reflect that trial counsel and the sentencing court advised Conley of his right to a jury trial and his right to trial by jury during the sentencing phase. At the evidentiary hearing, Attorneys Sorge and

19

> Watson testified that: (1) Conley insisted on pleading guilty and forgoing a jury trial; (2) trial counsel made the strategic decision that entry of a guilty plea was Conley's best chance at avoiding a sentence of LWOP; and (3) trial counsel advised Conley accordingly. Accordingly, we cannot say the PC Court's denial of this claim is clearly erroneous.

*Id.*

As previously indicated in this Order, in discussing whether Conley received ineffective assistance of counsel with respect to advising him to plead guilty, *Conley II*'s findings are not unreasonable. And they amount to a not unreasonable application of *Hill*'s standards for a valid guilty plea. To the extent Conley wishes to collaterally challenge the plea because he ended up receiving no benefit from it, "a plea's validity may not be collaterally attacked merely because the defendant made what turned out, in retrospect, to be a poor deal." *Bradshaw v. Stumpf*, 545 U.S. 175, 186 (2005).[2]

## IV.   CERTIFICATE OF APPEALABILITY

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 580 U.S. 100, 115 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of

---

[2] Mr. Conley also suggests in his petition that it was improper for the prosecution, in closing argument at sentencing, to note the actual time Mr. Conley might serve in prison if sentenced to the maximum possible term of 65 years instead of LWOP, after accounting for credit time opportunities. He claims trial counsel should have objected to this argument but failed to do so. Respondent did not directly respond to this contention. However, Mr. Conley did not raise this argument before the Indiana Court of Appeals or Indiana Supreme Court. Dkts. 7-3 (Appellant's Brief for *Conley II*), 7-14 (Appellant's Response in Opposition to Petition to Transfer). Therefore, the argument is procedurally defaulted because it was never presented to a state court for resolution and it does not appear that it could now be raised in state court. *See, e.g.*, *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992) (stating that procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court."). Moreover, Mr. Conley cites no authority indicating it is inappropriate for a prosecutor or judge to take into account the actual time a defendant might serve, after considering the possibility of credit time, when arguing for or fashioning a particular sentence.

appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 580 U.S. at 115 (cleaned up).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Despite the complexities involved with sentencing someone such as Conley to an LWOP sentence, his habeas arguments were largely perfunctory and lacking legal analysis. It is apparent that Conley at this point is merely seeking repeated bites of the apple when it comes to his sentence. It is a harsh sentence, to be sure, but one that has been affirmed repeatedly by multiple state-court judges in detailed and thoughtful opinions, and is subject to only very narrow challenge under AEDPA. Jurists of reason could not disagree with this Court's resolution of Conley's claims and nothing about the claims deserves encouragement to proceed further. Therefore, the Court concludes that a certificate of appealability **shall not issue**.

### V.  <u>CONCLUSION</u>

Conley has failed to demonstrate that he is entitled to habeas corpus relief because he has not shown that the Indiana state courts in *Conley II* and *Conley III* made unreasonable factual findings or unreasonably applied federal law when rejecting his claims of ineffective assistance of trial counsel and of an unknowing, unintelligent, or involuntary guilty plea. His petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED** and a certificate of appealability **SHALL NOT ISSUE**.

Final judgment shall issue by separate entry.

**IT IS SO ORDERED.**

Date: 6/11/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email